UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PULASKI COUNTY, VIRGINIA, )
A political subdivision of the )
Commonwealth of Virginia, )
County Administration Building )
143 Third Street, NW, Suite 1 )
Pulaski, Virginia 24301 )
)
    Plaintiff, )
)
    v. ) Civil Action No. _____
)
ALBERTO R. GONZALES, )
United States Attorney General, and )
R. ALEXANDER ACOSTA, )
Assistant Attorney General, )
Civil Rights Division )
United States Department of Justice )
950 Pennsylvania Avenue )
Washington, D.C. 20530 )
)
    Defendants. )

## COMPLAINT

1.    This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. Section 1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1343 (a)(4), 28 U.S.C. Section 2201, 42 U.S.C. Section 1973b, and 42 U.S.C. Section 19731(b).

2. Plaintiff Pulaski County ("the County") is a political subdivision of the Commonwealth of Virginia. Located in the southwest portion of Virginia, Pulaski County is approximately 350 miles southwest of Washington, D.C., 50 miles west of Roanoke, Virginia on Interstate 81, and about 220 miles west of Richmond.

3. Governmental units within Pulaski County include the Board of Supervisors of Pulaski County, Virginia, Pulaski County School Board, the Dublin Town Council and the Pulaski Town Council.

4. Pulaski County is governed by a five-member Board of Supervisors. All five of the supervisors are elected from single-member districts. The entire board is elected at the same time, once every four years, and a plurality win system is in effect. The supervisors serve four-year terms. *See* Va. Code Section 24.2-218. The Board's Chair and Vice-Chair are selected by the other supervisors.

5. By referendum vote on November 3, 1992, Pulaski County voters elected to change from an appointed to an elected School Board. The five members of the School Board are now elected, one from each supervisor's district, a plurality win system is in effect. Board members serve four-year terms, with the same method of election terms as used for supervisor elections.

See Va. Code Section 24.2-223. Pulaski County School Board elections are non-partisan.

    6.    The Town of Dublin has a mayor-council form of government. There are six members of the Dublin Town Council, who are elected at-large by plurality vote, and a mayor. The mayor only votes to break a tie. Elections are held at the May general election in even numbered years every two years, with three council members elected every two years. The term of office for mayor is four years and council members serve four year terms. See Va. Code Section 24.2-222. These elections are non-partisan.

    7.    The Town of Pulaski has a mayor-council form of government. There are six members of the Pulaski Town Council, who are elected at-large by plurality vote, and a mayor. The mayor only votes to break a tie. Elections are held at the May general election in even numbered years every two years, with three council members elected every two years. The term of office for mayor is two years and council members serve four year terms. See Va. Code Section 24.2-222. These elections are non-partisan.

    8.    There are twelve voting precincts in Pulaski County for purposes of electing the County Board of Supervisors members and School Board members. The polling places are located in the Belspring United Methodist Church, the Fairlawn Fire Department, the New River Fairgrounds building, the Draper Fire

Department, the Central Gym, the Dublin Lions Club, the Hiwassee Fire Department, and the Snowville Elementary School. Some of these polling places house multiple precincts.

There is one voting precinct in the Town of Pulaski for the purpose of electing the town mayor and town council members.

There is one voting precinct in the Town of Dublin for the purpose of electing the town mayor and town council members.

9. According to the 2000 Census, Pulaski County has a total population of 35,127 persons, of whom 32,529 (92.6%) are white; 1,957 (5.6%) are black, and 336 (1.0%) are Hispanic. The total voting age population is 27,888 persons, of whom 25,931 (93%) are white; 1,531 (5.5%) are black, and 241 (0.9%) are Hispanic. According to the 2000 census, the Town of Dublin has a population of 2,288 of whom 196 (8.6%) are black and 15 (0.7%) are Hispanic. The total voting age population of the town is 1,870 people, of whom 166 (8.9%) are black and 14 (0.7%) are Hispanic. According to the 2000 census, the Town of Pulaski has a population of 9,473 of whom 734 (7.7%) are black and 191 (2.0%) are Hispanic. The total voting age population of the town is 7,415 people, of whom 542 (7.3%) are black and 126 (1.3%) are Hispanic.

10. Like other jurisdictions in the Commonwealth of Virginia, Pulaski County does not collect or maintain voter registration data by race. The numbers

countywide, irrespective of race, however, are encouraging. Since 1990, registration in the County has grown more than 40% from 14,729 in 1990 to 20,672 in 2004. Today, more than 74% percent (20,672 of 27,888) of the County's voting age population are registered voters.

11. Voters may register in person at the Registrar's Office on the third floor of the Stone Pulaski County Courthouse, 52 West Main Street, Suite 300, Pulaski, Virginia, between 8:30 a.m. and 4:30 p.m., Monday through Friday. Voters also may register at the Department of Motor Vehicles. Voter registration applications are available at the Pulaski County Main Library and it's Dublin Branch, at County post offices, at the Pulaski County Service Center in Fairlawn, at Pulaski County High School, at Pulaski County Department of Social Services and at the Regional Mental Health Agency. The registrar's office will mail registration applications upon request. Twice a year, the registrar's office registers seniors at the only high school. Civic organizations and churches also conduct registration drives. The registrar's office gives these organizations registration forms and advises the participants on how registrants are to fill out the forms.

12. As a political subdivision of the Commonwealth of Virginia, plaintiff Pulaski County has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C.

Section 1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including Pulaski County, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

13. Since its inception in 1965, the Voting Rights Act has allowed the States and political subdivisions, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act.

14. In 1982, Congress made changes in the exemption standards of the Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States and political subdivisions covered under the special provisions of the Act are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

    A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;

    B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color or membership in a language minority group;

    C)    no Federal examiners have been assigned to the political subdivision;

    D)    all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c; and

    E)    the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

15. As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

    A)    Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;

    B)    Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and

    C)    Expanded opportunities for convenient registration and voting exist within the State or political subdivision.

16. As described in each of the paragraphs set forth below, Pulaski County has fully complied with the provisions of Section 4 of the Act as set forth in paragraphs 14 and 15, *supra*.

17. Over the years, Pulaski County has made numerous submissions to the Department of Justice seeking preclearance of voting changes under Section 5 of the Voting Rights Act. In the preceding ten years, Pulaski County has made

fourteen (14) Section 5 submissions of changes affecting voting for preclearance review under Section 5 of the Voting Rights Act. 42 U.S.C. Section 1973c. The office of the defendant Attorney General has approved each and every voting change that has been submitted by the County for preclearance under the Voting Rights Act. Since passage of the Voting Rights Act in 1965, not a single objection has been interposed by the Department of Justice to any voting change in Pulaski County. Many of the voting changes made over the years in Pulaski County and submitted for Section 5 preclearance actually expanded the opportunities for County residents to become registered voters and to cast ballots.

18. Pulaski County has a three-member Electoral Board appointed by the County Circuit Court judge. The Electoral Board is responsible for conducting elections and appointing the Voter Registrar. Historically, the chairs of the local Democratic and Republican parties forward names to the Electoral Board to be appointed as poll officials by the Electoral Board. The appointment of poll officials is for a one-year term. Currently, none of the members on the Electoral Board is a member of a racial minority group. No person recommended by a political party chair to serve as a poll official ever has been rejected by the Electoral board.

19. In recent years, the local political parties have not made recommendations to the Electoral Board for poll officials. There is no indication

in the preceding ten years that any eligible Pulaski County resident who has expressed an interest in becoming an election official has been denied the opportunity to serve. The registrar forwards the names of voters indicating an interest in serving as a poll official to the Electoral Board for consideration and appointment.

20. Although the number of minority citizens in Pulaski County is quite small, minority citizens have nonetheless played important roles in the political process. For example, Pulaski County currently employs 100 poll workers, of whom 12 are black or multi-racial. In addition, Joseph L. Sheffey, who is black, is the Chairman of the Board of Supervisors of Pulaski County. Lane Penn, who is black, is a member of the Pulaski Town Council. Edith Hampton, who is black, is a member of the Dublin Town Council and is the appointed Pulaski County Building Inspector.

21. No person in Pulaski County has been denied the right to vote on account of race, color, or membership in language group since at least the time the Voting Rights Act was enacted in 1965.

22. No "test or device" as defined in the Voting Rights Act (42 U.S.C. Section 1973b(c) has been used in Pulaski County as a prerequisite to either registering or voting for at least the preceding ten years.

23. Pulaski County has never been the subject of any lawsuit in which it was alleged that a person (or persons) was being denied the right to vote on account of race, color or membership in a language minority group.

24. No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race, color, or membership in a language minority group.

25. Pulaski County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Under the County's current election method, minority voters are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors, to the County School Board, or any of the Town governmental bodies.

26. Federal examiners have never been appointed or assigned to Pulaski County under Section 3 of the Voting Rights Act. 42 U.S.C. Section 1973a.

27. There are no known incidents in Pulaski County where any person exercising his or her right to vote has been intimidated or harassed at the polls (or while attempting to register to vote).

28. The allegations set forth in paragraphs 2-11 and 16-27, above, if established, entitle Pulaski County to a declaratory judgment under Section 4 of

the Voting Rights Act, 42 U.S.C. Section 1973b, exempting the County and the governmental units within the County from the special remedial provisions of the Voting Rights Act.

29.     Pursuant to 42 U.S.C. Section 1973b(a)(4), Pulaski County has "publicize[d] the intended commencement and ... proposed settlement of [this] action in the media serving [the County] and in the appropriate United States post offices." Pulaski County has publicized the intended filing of this action prior to its commencement in the local newspaper of general circulation and in appropriate United States post offices throughout the County in accordance with 42 U.S.C. Section 1973b(a)(4). Pulaski County issued a notice regarding the proposed bailout on March 28, 2005. The County published notice at the Registrar's office and in The Southwest Times, a local daily newspaper having a general circulation in Pulaski County, in the April 5, and April 12, 2005 editions. In addition, the County posted copies of the notice in other public locations, including the County Courthouse, the Pulaski County Main Library and its Dublin Branch, the Pulaski County Administration Building and the Voter Registrar's Office.

WHEREFORE, plaintiff Pulaski County respectfully prays that this Court:

A.     Convene a three-judge court, pursuant to 28 U.S.C. Section 2284 and 42 U.S.C. Section 1973b, to hear the claims raised in plaintiff's complaint;

B. Enter a declaratory judgment that Pulaski County is entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C. Grant such other relief as may be necessary and proper as the needs of justice may require.

ORIGINALLY SIGNED (IN PEN) COMPLAINT

_____
GARY C. HANCOCK
D.C. Bar No. 369265
Gilmer, Sadler, Ingram,
 Sutherland & Hutton
P. O. Box 878
Pulaski, Virginia 24301
Tel: (540) 980-1360, Ext. 15
Fax: (540) 980-5264
e-mail: ghancock@gsish.com

_____
THOMAS J. McCARTHY, JR.
Attorney, Pulaski County
P. O. Box 878
Pulaski, Virginia 24301
Tel: (540) 980-1360, Ext. 15
Fax: (540) 980-5264
e-mail: plindamood@gsish.com